## SHEEHAN v. NEW YORK, N. H. & H. R. CO.

No. 7001.

District Court, E. D. New York.

March 17, 1937.

Thomas J. O'Neill, of New York City, for plaintiff.

E. R. Brumley, of New York City, for defendant.

ABRUZZO, District Judge.

This action was brought by the administratrix of the estate of John J. Sheehan, deceased, against the New York, New Haven & Hartford Railroad Company, for damages which were occasioned by reason of the death of the deceased who was an engineer in the employ of the defendant company. The accident occurred at about 12:22 a. m. at the bridge over the Saugatuck River at West Port, Conn.

A freight train, which had had some trouble, was stopped at or near this bridge. While this freight train was standing still, the deceased, operating another freight train, crashed into the rear of the stalled freight train, as a result of which he received injuries from which he died.

The collision occurred on September 27, 1935. The testimony indicated that the weather was muggy, yet the visibility was good.

After the case was submitted to the jury, a verdict was rendered by them in

the sum of $100,000, the full amount sued for. The defendant made the usual motions to set aside the said verdict.

Upon the question of the defendant's negligence, there is ample proof to sustain the jury's findings. The defendant in its brief makes no point to any great extent of that phase of the case. That the flagman did not go back far enough from the rear of the stalled freight train at the bridge to give the usual warning is practically conceded. At least there was sufficient evidence for the jury to have made such a finding.

The defendant, however, urges: First, that the deceased was guilty of contributory negligence as a matter of law in passing signal light 12–F; secondly, the defendant contends that the verdict is contrary to the weight of the evidence; and, thirdly, that the verdict is grossly excessive.

The defendant claims and contends that when the plaintiff passed the signal light 12–F, it was red and that the deceased should have seen this signal and stopped his train. If the light were red, the deceased was guilty of contributory negligence as a matter of law and the jury's findings should not be permitted to stand.

The case was submitted to the jury upon the theory that the defendant had the burden of proving that the deceased was guilty of contributory negligence. The plaintiff had no proof as to whether or not the light was red, green, or out entirely at the time the deceased approached and passed it. The plaintiff relied upon the presumption that the deceased, having had thirty years of experience and a good record, would not be likely to pass this signal 12–F if it were red. There was some evidence that the stalled freight train had been dragging a brake before it stopped, and the plaintiff argued that the dragging brake must have interfered with the wire that carried the current to signal 12–F. The defendant produced some proof that signal 12–F had not been interfered with by virtue of this dragging brake and called to the witness stand an employee who was riding on the train that the deceased was running. He testified that he saw the light just before the collision took place and after the deceased had gone by it, and at that time it was red.

The defendant also called many witnesses who testified that immediately after the accident the signal 12–F was sealed and an inspection of it made and that nothing was found to interfere with the current running to this light and that everything seemed to be in order.

The jury was instructed that if the light were red and if the deceased passed it at the time it was red, the verdict of necessity must be for the defendant. The jury was also instructed that if the deceased was in any way contributorily negligent and helped to bring about his own accident, the jury had the right and it was their province to make such deduction to such a degree as they might find.

■ In this regard, the court with thoroughness instructed the jury that they were to keep in mind that the decedent was an experienced engineer and knew the road at that particular point well. They were to take into consideration whether the decedent had the right to proceed under all the circumstances and to say whether he was justified in passing the point where the signal 12–F was situated. It was the jury's province to determine whether or not the decedent's actions under all the circumstances were those of a reasonably prudent man and to make their determination accordingly.

The authority for this part of the court's charge is found in the case of Kierce v. Central Vermont Ry. (C.C.A.) 79 F.(2d) 198, which seems to be the law of this case. The case at bar seems to come squarely within the case cited with respect to the question of contributory negligence and under that authority the findings of the jury should not be disturbed on this question.

■ Upon the contention as to whether or not the verdict was against the weight of the evidence, all of the witnesses for the defendant were employees of the defendant company. The credence to be given to the various witnesses in the case and the reliance to be placed upon them was clearly one of fact for the jury to decide. Both the plaintiff and the defendant had able counsel, experienced and well-grounded in the trial of jury cases. The jury was in a position to pass judgment upon the manner and demeanor of the witnesses and how much confidence they could place in them, and their determination in favor of the plaintiff, unless clearly against the credible weight of evidence, should not be disturbed.

In determining this important question, it must be borne in mind that there was ample evidence as to the negligence of the defendant in the failure of the flagman to go back far enough from the stalled freight train. Undoubtedly, had he gone back far enough even though signal 12-F was not working properly, the engineer would have been apprised of the stalled freight train by the signal that the flagman would have given him. It could be well argued that the accident would not have happened had the flagman attended to his duties properly. The credible evidence on this point was in favor of the plaintiff. As to the evidence with respect to contributory negligence, wherein the defendant had the burden of proof, the jury was justified in finding that the defendant had not sustained its burden. It cannot be said, therefore, that the verdict is clearly against the weight of evidence.

The verdict of $100,000 is obviously excessive. To what extent it should be reduced is not easy to determine.

The decedent was in good health, an industrious worker, and had been employed by the defendant for thirty years before his death. He was forty-eight years of age and left a widow, forty-six years, and four children, twenty-four, twenty-three, nineteen, and eleven years old, respectively. There was no dispute that the deceased earned approximately $3,000 per year. There was no dispute that he used some of this money for his personal expenses and that he lived on part of his earnings. He had a life expectancy of about twenty-two years.

The plaintiff sets forth the contention that the deceased might have been promoted. That is possible. It must also be taken into consideration that he might not have continued as an engineer and that he might have had to accept a position in the future at a reduced income. One argument seems to offset the other. The deceased, if he worked steadily for twenty-two years, would earn $65,000. That would bring him to the age of seventy. It is hardly likely that he would have worked as an engineer until that age. It is possible but not probable. A twenty-two year expectancy of life does not necessarily mean that the person will be in good health or even in fairly good health during that span of years. It does not mean that he will necessarily live twenty-two years. The decedent's employment as an engineer required perfect eyesight. It is logical to assume that a twenty-two year expectancy of life does not carry the certainty that perfect eyesight will also remain for that length of time. It is very problematical and speculative to conceive of any definite, hard and fast rule with respect to that.

Some logical discount must be made in favor of the defendant upon these points, but assuming that the deceased did work for the full expectancy of twenty-two years and that he earned the same amount of money throughout, he would certainly use a portion of his income for his own maintenance and this would have to be deducted from the $65,000 which he might have earned had he lived. Then, too, three of his children were beyond the age of minority and only one was very young. The tendency would be for him to use more of his income for himself as his children grew up and settled their own lives for themselves.

Under all the circumstances, the verdict is hereby reduced to $40,000.